Cases No. 20-21-65 Triple Canopy, Inc. v. Secretary of the Air Force Mr. Schaffer Thank you, Your Honor. May it please the Court, Jonathan Schaffer, Counsel for Appellant Triple Canopy. The Armed Services Board erred in holding that the government met its burden to demonstrate Triple Canopy's claims were time-barred. The Board applied an unreasonable interpretation of the Contract Dispute Act and the FAR Claim Accrual Rules, contrary to their plain language and decisions of this Court. Under the Board and government's view, Triple Canopy was required to file speculative, premature, and factually inaccurate claims with the Contracting Officer to protect from an alleged government statute of limitations defense. But in Kellogg's, Bryan & Root, this Court held that contractors are not required to file such protective claims. The Board and government's position is contrary to law and would place contractors like Triple Canopy in an unfair and untenable position, contrary to the CDA, and probably contrary to the False Claims Act. Now, with regard to Apool, there are no facts in dispute. This is Judge Dyck. Could you help me here? Is there anything in the FAR or the Contract that requires that the contractor give advance notice of a potential liability such as this one? Well, the contractor did give advance notice and worked with the government to claim exemption. I understand that. But what I'm asking, is there a requirement in the contract for advance notice? And I'm not talking here about a claim. I'm talking about advance notice that there's this contingent potential liability. Right. Well, in the... Let me go back to look at the Foreign Tax Clause, FAR 52.229-6. No, there's no requirement that you give advance notice other than the standard notice of a change or something like that. But no, there's no separate advance notice requirement. Okay. And with regard to Apool, because that's the issue here is with Apool, there are no facts in dispute. And this court reviews the board's legal findings and application of law to the undisputed facts de novo. And the board held, and the government contends, that the claim accrued on March 24, when the Afghan government made its initial assessment. But that is not when any liability fixed. And that contention is contrary to the FAR as interpreted by this court and Kellogg, Brown and Root and other decisions. And importantly, it's contrary to the Foreign Tax Clause, because that clause requires the contractor to use all reasonable efforts to seek a tax exemption. And if Triple Canopy had not done that, the government, and this is reflected in other board cases, the government would have said that Triple Canopy had shirked its duty and that Triple Canopy was at fault. So Triple Canopy had to appeal under the Afghan procedures. And they did, and it was a prompt process. And they received a final decision on July 6, 27. And that's when the liability fixed. That's when the amount was known and when the liability fixed and became due. And the board erred in stating that Triple Canopy's Afghan appeal was optional. And that's in the Joint Appendix 10. The board said it was optional, but it wasn't optional because FAR 52.229-6 says the contractor has to use all reasonable efforts to seek an exemption. And that's exactly what Triple Canopy did. The government... Mr. Schaffer? Mr. Schaffer? Yes. Excuse me. This is Judge Schall here. I just want to make sure I understand one point. The provision to which you've been referring, 52.229-6, refers to taxes, is a definitional provision. It says tax and taxes include fees and charges for doing business. I assume it's your position that the penalty that was imposed by the Afghan government for having more than a certain number of employees during the applicable period of time in these various contracts was a fee. Is that correct? Yes, that's right. It was a tax. And that issue was never resolved by the board. The board made no findings of fact. And it's our view, following the fireman's fund case in Oracle, that the court should not... This court should not sit as a trier of fact, and that that should be sent back to the board to resolve any factual issues that relate to whether it's characterized as a tax or something else under Afghan law and under the relevant documentation. Okay, thank you. But I wanted to come back to this idea that the board said that it was an optional process and that triple canopy, again, wasn't required to follow it. They were, but the foreign tax clause says that they are required to proceed that way. And so if they had not, the government would come back and say, you've shirked your obligations. There's a problem. And under the CDA and the FAR accrual rules, a claim accrues when the events necessary to fix the alleged liability and permit assertion of the claim have occurred. And again, that did not happen in March, because at that point, it was just an initial assessment. And the assessment said, you can appeal that determination. And triple canopy had good ground to appeal that determination because the U.S. government had repeatedly told triple canopy that it was exempt and had repeatedly taken those declarations of exemption, put them in letters, sent them to the Afghan government, and triple canopy had submitted them to the Afghan government. And triple canopy was, in essence, asserting a public policy exception. It was saying- Mr. Schaefer, am I, and also, am I correct in understanding that the appeal that triple canopy pursued led to a reduction in the assessment? Isn't that correct? That's correct. It led to a reduction in the assessment. Some weapons issues were dropped, but also the numbers changed in terms of the unregistered foreign citizens. Triple canopy said these numbers aren't right, and here's why. And the Afghan appeal authority agreed with triple canopy in part and reduced the assessment, which just validates the fact that triple canopy followed the rules of the foreign tax clause appropriately. And to come back to what I was saying, the government, again, gave statements of exemption to triple canopy. And what triple canopy is doing is vital to the reconstruction efforts in Afghanistan. And that's the joint appendix at 431 and 433 and 739. And the U.S. government said triple canopy is now immediately exempt. And it said to ensure there's no disruption to the Afghanistan reconstruction effort, that's why there has to be this exemption. And so triple canopy was no lawbreaker. They were following what the U.S. told them to do in order to perform their contract. And then when the government of Afghanistan said, we're going to impose an assessment of you on a certain amount, triple canopy followed the foreign tax clause. And they appealed that within the Afghan government. And the Afghan government agreed in part with triple canopy and then reduced the amount. And that was the final fixing of liability. That July 6 date was when the claim accrued, and triple canopy filed its claim within six years of that date. And that's why there's no statute of limitations issue. The other issue I want to briefly talk about is that the court should not adopt the government's fallback argument. The government argues that even if you agree with our position on the statute of limitations, that the amount is not a tax, and that somehow triple canopy has done something wrong. And as I said, that's absolutely not the case. The record is clear that triple canopy was repeatedly that it believed triple canopy was exempt, and that triple canopy's efforts were vital to the reconstruction effort. That's a public policy exemption. And so triple canopy followed the foreign tax clause, section I, and it approached the Afghanistan government, the exemption, exactly as it was supposed to do. And to the extent that the court has any questions about that issue, the appropriate next step would be to remand back to the board. Under this court's oracle decision, the general rule is that federal appellate courts don't consider an issue not passed upon below, particularly when there are material facts in dispute, and those facts have not been resolved by the trial or fact. There are various definitions in the record of the word penalty. And at one point, the Afghan government uses the phrase penalty taxes, which is not particularly helpful. And so there are factual disputes as to what that means. Although one way to think about it, I was thinking about it, one way to consider the issue is it's similar to prohibition in the United States. At one point, the United States government said alcohol is prohibited. If you have alcohol, it's illegal with some sections, period. And that changed. And then they said, alcohol is legal, but we're going to tax it. And so the government wanted to perhaps reduce the amount of alcohol being used or whatever. So they implemented a tax. That's what basically what happened in Afghanistan. There was some debate in Afghanistan about not allowing contractors to have more than 500. But the U.S. government repeatedly said, it's vital to the reconstruction effort that contractors have more than 500 personnel. And then they changed the law and they said, okay, we're just going to have these assessments, which sometimes they called a penalty. Sometimes they called it a penalty tax. But the U.S. Supreme Court had said that those labels are not determinative, that you can have something labeled a penalty that's really a tax. And that's what you have here. This is a fee for doing business in Afghanistan. If you're one of the larger companies and you have more than 500 people in Afghanistan, you have to pay a fee. Well, that's a tax. That's not some sort of criminal penalty or something else. It's something subject exactly to this clause. So we would ask that the court reverse the board's decision, deny the government's efforts to invite the court to decide these mixed questions of the fact of law and the merits in the first instance, and remand to the board below for further proceedings. Unless the court has any questions, I would reserve my remaining time. Thank you. Any more questions for Mr. Schaefer? No. No, I'm fine. Thank you. All right. Then for the government, Mr. Yale. Thank you, Your Honor. And may it please the court. We'd first like to address the issue. This is Judge Teich. I got to say I'm baffled that the government is taking the position it does on the statute of limitations. I mean, isn't the contract absolutely clear that they were required to appeal the assessment, that they did appeal the assessment and that they got it until that had happened? Well, we think if you look at the actual plain language of the provision at issue, it only requires that an appeal or reasonable action be taken under a certain situation, which was not met here. And that's what the board was according to. So if we look at the foreign tax clause and we look at little I, it has the phrase, the contractor shall take all reasonable action to obtain exemption. That's true. But later on, the situation where you have to take reasonable action is only where the United States government, the contractor, any subcontractor, or the transactions or property covered by this contract are exempt under the laws of the country concerned. This is Judge Shaw, if I could interrupt you because time is fleeting here. I just don't think I can agree with that. We have a finding here by the board, a determination by the board, and I'm looking at appendix page 11, where the board says triple canopy had a duty both to notify the government of the potential fine and to challenge the amount of the fine. There's the board saying the triple canopy had an obligation to do exactly what triple canopy did. And why does that not bring the case within what we said in Kellogg-Brown route, where the claim doesn't I mean, it seems here we have a situation, we don't see it in all cases, but here we have a situation where a contractor seems to have done everything it was required to do. Why is the government fighting this? Well, respectfully, I mean, as to the first point of the statute of limitations, we, you know, just based upon the plain language we just read, I recognize that in the pages you pointed to when it's addressing that false claims act argument. So the board has seemingly said, on the one hand, that it's an optional process. And that's when it's looking at the plain language here. It does later on, you know, certainly state what you just said. But what matters here is the actual language of the contractual provision and the plain language says, it has to be exempt. So there's no evidence in the record that Afghanistan has ever exempted these penalties. And so all that might have, but it might, but there was an possible that in view of the arguments advanced in support of triple canopy by the government, the Air Force, I guess, whoever it was, that there would be an exemption of some kind granted. I just, I mean, it really seems like, you know, but just go ahead. I'm finished. Well, just to address that point, the board is pointing to the fact that, yes, there is a possibility, but that's not mandatory. So when we see in cases like KBR and electric bow, where there's arguments about a quote, mandatory pre-claim procedure here, the only basis upon which it would be mandatory is if there actually is an agreement between the two countries, there's no evidence of that. And wait, is your contention that they should claim the full amount foregone the appeal proceeding so that the government wouldn't get the benefit of the reduction in the amount? That's not what we're saying. What we're saying is they could go forward with the final determination of the amount, which is necessary to make a claim until the appeals process had been completed. How's that possible? Well, because here we have a situation where they're not, the appeal was not on the basis. They're not pointing to any actual exemption that's been made by Afghanistan. So what? So what? They were still appealing the amount. How could the, how could the amount be final until the appeal process is concluded? Well, I think what, there may be a little bit of confusion, I guess, perhaps on my part, but under the CDA, I mean, you have to present some certain that's for sure. But later on, I mean, there can be all sorts of situations where the final amount does not end up being the exact same here. What matters here is that there is liability and there's been, liability was established on March 24, 2011, when this penalty assessment was made. And your theory is you have to make a claim before the events have occurred that determine the amount of the claim? Well, they had the amount of the claim on March 24, 2011, and that fixed the liability. The liability was that they were significantly over this 500 personnel limit. And so that was set both by the February 2008 document as well as by the presidential directive. But Mr. Yale, what concerns me is, and I can only speak for myself, is that yes, a set amount was set forth, but then it said that you had a right to appeal. And obviously, as your discussion with Judge Dyke indicates, the appeal could, and in fact, did lead to a reduction in the amount for which the government might be on the hook eventually via a claim. And then we have this contract provision that says they were required to take all reasonable steps. And then finally, as you pointed out, or as we agreed, you have a situation where the board itself said it had to follow the appeal. I mean, it just seems to me to be a reasonable, sensible approach to say, okay, your claim accrued when the final amount was determined. Well, again, here, I mean, the language that we're pointing to says there needs to be an exemption. So if you think about it in the context, if this was, for example, state taxes or something along those lines, and, you know, there was an announcement, there had been an announcement that X state had, you know, a contractor. Excuse me, but excuse me, if the amount is reduced from either the amount claimed to a lesser amount or to nothing, there's been an exemption. I mean, in effect, you've obtained a reduction in the original claim. Well, I mean, I think an exemption is more of a term of art, which is that this entity, this contractor, they have no obligations to pay the taxes at all. Not that there are 200 people over the limit, and we're going to look more closely at what's been provided here, we're going to reduce it down by a certain amount. It's that there, you know, for example, there's been an agreement that they're not on the hook, they don't have to pay the taxes at all. And so here, you know, we don't think that a contrary rule would actually benefit the contractors either, because what we're saying is that if there is an exemption, if there is an agreement between two, the United States and another foreign country, at that point, you have to take reasonable action. But you don't have to go and take reasonable action, any sort of appeal just to appeal when there's no exemption that you're pointing to. And so in sort of the earlier findings of the board, that's what, you know, that's our reading of what they're saying. That here, what we're talking about is reducing it based upon the number of employees or whatnot. But they're not pointing to any actual exemption from, you know, they're not pointing to an agreement between Afghanistan and the United States. They're certainly not pointing to... Sorry, Mr. Yale, this is Judge Shull again. So what you understand, what you're saying is that the contractor did not have to appeal to the Afghan government. In other words, that the clause 229-6I doesn't apply, because we're not talking about an exemption here. What they were saying is, we're not exempt from the limitation provision. We're just saying we shouldn't have to pay it because of, or it should be reduced because of. Is that your argument? That is correct. And the only thing they're really pointing to there are these government statements. But again, when you look at the provision itself, what it's talking about, there's two situations here. One is a situation where the United States and a foreign government enters into an agreement. There's no evidence of the record that occurred. The other situation would be when the taxes, quote, are exempt. And there's no evidence in the record that these, if we're going to call them taxes, that they are exempt. Mr. Yale, let me ask you this. I would assume, Mr. Yale, I would assume that the government was, meaning the federal government, our government was happy that Triple Kennethy obtained a reduction, right? Well, I don't, I'm not sure I would characterize it one way or the other. I mean, there's a the parties have to follow the contract. Now, um, you know, No, no. Let me ask you what I'm saying is if, if in fact this claim goes through and you say it shouldn't, isn't it to the government's advantage that the original amount that was assessed by the Afghan government was reduced? That's a good thing for the government, isn't it? Well, I mean, it's potentially in that for this particular situation, there was a small reduction, you know, there, there was some sort of a small reduction here that that's, that's correct. But that's, I mean, that's, that doesn't necessarily equate with the situation, whether or not a contractor has to take those steps. So if we circle back and compare it to the electric boat case there, the, the, there, the, the contractor was saying, well, we first had to go to the government. And once there was this, this change in law, and then they needed to, you know, sort of deny the costs or not. And so to, to some extent, it, you know, maybe for, for whatever reason, that, that process happens and costs are reduced and the government, um, is able to, at the end of the day, pay a lesser amount, but that doesn't mean that, that, uh, affects when the claim accrues because you have to actually look at the provision at issue here. And so that's, that's what the board we think was referring to when it said that... Did they argue on appeal, did they argue on appeal that they were exempt? Well, they pointed to the statements, they pointed to the statement that they are... Did they, yes or no, did they argue on appeal that they were exempt? Yes, they used the word exempt, but if I can respectfully, if I could clarify that, what they were pointing to there was not an exemption made or issued by the Afghan, you know, by the, uh, Afghan government itself, and that's supported by the claim at issue. So just to direct your honor to, to one part of the appendix, and this is appendix page 484, which is one of Triple Canopy's claims, they're, they're basically the derivative, but if I can quote that, it says, notwithstanding the DOD's position, the GIRA did not agree that TC was exempt and refused to grant an exemption for TC. The GIRA made this determination in March 2011, with its creation and imposition of fees applicable to all PSDs that exceeded the personnel limit. So we know at that point in March, 2011, that Triple Canopy is on notice that this, this, this quote exemption that they appointed to with these statements for the government has already been addressed by, by Afghanistan. And so they're not pointing to any agreement or any actual exemption. And we, we frankly, it may help Triple Canopy in this case, but we don't think it would normally help, um, you know, every contractor to have a situation where you're imposing some sort of additional duty to go and appeal, um, these, these penalty assessments when that's not what the provision, which is incorporated into the contract requires. And so that's determined, it would be determined, this is Judge Schall, Mr. Giaf, I think that would be determined by, you know, it would turn on what the provisions of each particular contract provided. But one final thing, what are you, what are we to make though, and I think you touched on this earlier, of, are we to conclude that the government says the board erred in saying that, uh, Triple Canopy was required, uh, to, um, uh, to, to appeal? Are we, sorry, are we required? I'm not sure I understand that question. No, no, I apologize. We, earlier I read the statement at page 11 of the board's opinion that said Triple Canopy had a duty both to notify the government of the potential fine and to challenge the amount of the fine. Um, is it, is it your position now on appeal that that statement by the board was incorrect? Well, I think it's certainly inconsistent with the earlier statements that Triple Canopy's counsel was pointing to and the statement that I think we more addressed in the briefs, which is that this was not a mandatory process. So both of those can't be correct, I don't think. So, um, to that extent, we think that the first statement that it, that it was not, you know, that it was an optional process, we think that that, uh, is a correct statement that was not erred. And to the extent that those, those later statements are inconsistent, then, then that could be an error. But we certainly don't think that, you know, the fact that there's an inconsistency in the opinion would, um, you know, necessarily require reversal or whatnot. We think it can be affirmed by, um, the rat, the plain language of, of the foreign tax clause. I've got to, this is Judge Teich, I've got to say, I cannot understand how the government is taking a position that there isn't an implied duty to challenge the amount of an assessment, regardless of the contract language. It seems to me that absolutely contrary to the government's interest, and I find it really, really difficult to understand. Well, can I address that very briefly, Your Honor? Yes, please answer. Well, so there are other provisions here in the foreign tax clause as well. So you had asked about this prompt notification provision. So, uh, if you actually look, Jay does require prompt notification. And so in that situation, the government gets notified. If they have an issue, they, the contracting officer can direct a party in that situation, if they want to, to go and say, you know what, you, you have to go challenge that. And in that situation, if that's what happened and the contractor does not comply with that specific direction, then they would not be able to recover under the foreign tax clause. But we're not saying that there's sort of no situation where a contractor would not have a duty to go and challenge this, but we're saying under the plain language here, it was not required. Okay. Any more questions for Mr. Yale? Okay. Okay. There's nothing further. We just asked it to affirm the board's decision. Okay. Thank you. All right. Mr. Schaffer. Thank you, Your Honor. The government's argument that there was no additional duty is contrary to contractor to use all reasonable efforts to pursue the exemption. And this argument that, well, it wasn't really an issue about exemption cannot be the case because the government repeatedly stated, the contracting officer for these contracts repeatedly stated to the Afghan government that Triple Canopy was exempt, that Triple Canopy was vital to the reconstruction efforts, and that Triple Canopy, it was needed to do the work. And so that was the basis for exemption that Triple Canopy was pursuing on appeal. It was following the rules laid out in the FAR, and it was following what the contracting officer told it to do. And that's a public policy exemption. The same kind of exemptions you would have if you were arguing before the IRS or state tax authority that under public policy reasons, I should be exempt. And significantly, Triple Canopy in its claims did not say, please reduce the amounts. We disagree about the weapon and we disagree about that. They said, please rescind, that's in quotes, rescind all assessments. And they said, we're exempt. And here's the explanation. And here's the documentation we're relying on from the United States government who awarded us these contracts. That's why we're in Afghanistan. We're doing the government's work. And they said, please rescind all of the assessments. So they followed the rules to the letter, and that's throughout all of Triple Canopy's claims. I think this is very clear. And I think the FAR Council has already answered the question that the government's raising. And the FAR Council said, you do have a duty to use all reasonable efforts to pursue. And as a result, under this court's Kellogg-Brown and Root case, and under the FAR rules, no liability was fixed until that July 6 decision, because on July 6, Afghanistan could have come back. And maybe if the political situation was different, maybe they would have. And they could have said, we agree with the U.S. government. The U.S. government says you're exempt. The U.S. government says you're vital to the reconstruction efforts. We agree. You don't know anything. That's not what they did. Instead, they reduced the amount. But that's when the liability fixed. That was the point at which any claim accrued. And Triple Canopy timely filed its claim within the six-year period. Unless the court has further questions, we would rest and ask that the court reverse the decision of the board below. Thank you. Any more questions from the panel, Mr. Schaffer? No. No. All right. Thank you. The case is taken under submission. And that concludes this panel's arguments for this session. The honorable court is adjourned until tomorrow morning at 10 a.m.